1998 ME 96

## TOWN OF NORTH YARMOUTH

v.

## Harold W. MOULTON Jr. et al.

Supreme Judicial Court of Maine.

Argued Jan. 6, 1998.

Decided May 1, 1998.

Joan M. Fortin (orally), Geoffrey H. Hole, Bernstein, Shur, Sawyer & Nelson, P.C., Portland, for plaintiff.

John A. Graustein (orally), Deirdre M. Smith, Drummond, Woodsum & MacMahon, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, LIPEZ, and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] Harold W. Moulton Jr. and Rosemary Moulton appeal from a judgment entered in the Superior Court (Cumberland County, Mills, J.) declaring that the Town of Yarmouth and the Town of North Yarmouth have jurisdiction over the Moultons' subdivision and that the jurisdiction is not limited to a joint meeting pursuant to 30–A M.R.S.A. § 4403(1–A) (1996 & Supp.1997).[1] Because we conclude that the court correctly interpreted the subdivision statute in this case, we affirm the judgment.

[¶ 2] The facts are undisputed. The Moultons are the developers of Sweetsir Farm, a proposed residential subdivision containing seventeen lots. All of the lots are located entirely in Yarmouth. The only access to Sweetsir Farm will be via Concord Circle, a northerly roadway connecting the subdivision to Deer Run Road, a public road in North Yarmouth. A portion of Concord Circle, marked on a 1967 subdivision plan as "Reserved for a road," is in North Yarmouth.

[¶ 3] The Moultons filed an application for subdivision approval with the Yarmouth Planning Board. In February 1996, the Yarmouth and North Yarmouth Planning Boards held a joint meeting to discuss the application. Later, the Moultons received approval from Yarmouth for the first phase of the subdivision. In July 1996, North Yarmouth filed a declaratory judgment action against the Moultons, seeking to establish that the presence of the access road in North Yarmouth required that the Moultons receive

---

1. Prior to amendment in 1997, section 4403(1–A) provided that "[i]f any portion of a subdivision crosses municipal boundaries, the reviewing authorities from each municipality shall meet jointly to discuss the application." 30–A M.R.S.A. § 4403(1–A) (1996). The 1997 amendments to section 4403(1–A) do not apply to this action. *See* P.L.1997, ch. 226, § 1 (effective Sept. 19, 1997).

North Yarmouth's approval of their subdivision pursuant to 30-A M.R.S.A. § 4406 (1996 & Supp.1997).

[¶ 4] The case was submitted to the Superior Court on stipulated facts. The court concluded that the statutory definitions of "subdivision" and "tract or parcel of land," see 30-A M.R.S.A. § 4401(4), (6) (1996), "contradict[ ] the [Moultons'] argument that none of the 'subdivision' is in North Yarmouth because only access to the subdivision and none of the lots or common areas of the subdivision are in North Yarmouth." The court held that the subdivision crossed municipal boundaries, and that North Yarmouth's authority was not limited to participation in a joint meeting pursuant to 30-A M.R.S.A. § 4403(1-A). The Moultons appealed.

[¶ 5] "We review the trial court's construction of a statutory scheme as a matter of law." *Town of Orrington v. Pease,* 660 A.2d 919, 921 (Me.1995). We interpret a statute to effectuate the legislative intent, which is ordinarily gleaned from the plain language of the statute. *See Interstate Food Processing Corp. v. Town of Fort Fairfield,* 1997 ME 193, ¶ 4, 698 A.2d 1074, 1075. The plain meaning of the statute will be applied unless it would lead to an absurd or illogical result. *See id.* In interpreting a statute, we must consider the entire statutory scheme in order to achieve a harmonious result. *See Daniels v. Tew Mac Aero Servs., Inc.,* 675 A.2d 984, 987 (Me.1996).

[¶ 6] We begin by examining the plain language of the subdivision statute, 30-A M.R.S.A. §§ 4401-4407 (1996 & Supp. 1997), which provides that "[n]o person may sell, lease, develop, build upon or convey for consideration ⁒... any land or dwelling unit in a subdivision that has not been approved by the municipal reviewing authority of the municipality where the subdivision is located...." *Id.* § 4406(1). We have to determine whether the Moultons' subdivision is located in North Yarmouth.[2]

[¶ 7] Unless the context indicates otherwise, a "tract or parcel of land" is defined for purposes of the subdivision statute as "all contiguous land in the same ownership...." 30-A M.R.S.A. § 4401(6). There is no dispute that the Moultons' single tract or parcel of land includes the area marked "Reserved for a road" in North Yarmouth. Unless the context indicates otherwise, the term "subdivision" is defined for purposes of the subdivision statute as the "division of a tract or parcel of land into 3 or more lots within any 5-year period...." *Id.* § 4401(4). Therefore, the division of the Moultons' single tract or parcel of land, that included the "Reserved for a road" area, into three or more lots within any five-year period falls within the statutory definition of the term "subdivision." This conclusion, however, does not end our inquiry.

[¶ 8] The Moultons contend that they are not required to obtain North Yarmouth's approval for their proposed subdivision since no part of that subdivision is located in North Yarmouth. They argue that a subdivision does not necessarily consist of the entire tract or parcel of land in which the subdivision is located.[3] They read the subdivision

2. This case does not require us to ascertain the scope of North Yarmouth's review or whether the Town may review those portions of the subdivision relating solely to Yarmouth. Nevertheless, we note our disagreement with the Moultons' claim that the Superior Court implicitly ruled that North Yarmouth can apply its subdivision ordinance to portions of a subdivision outside of its municipal boundaries.

3. The Moultons correctly point out that the phrase "tract or parcel of land" and the term "subdivision" are not synonymous. The statutory definition of "tract or parcel of land" clearly refers to an area of land. *See* 30-A M.R.S.A. § 4401(6). The statutory definition of "subdivision" refers to the act of dividing an area of land.

*See id.* § 4401(4); *see also Planning Bd. of Town of Naples v. Michaud,* 444 A.2d 40, 42 (Me.1982) (statutory definition of 'subdivision' contemplates the splitting off of an interest in land by one of the specified means). Notwithstanding this distinction, other parts of the subdivision statute refer to a "subdivision" as an area of land. *See* 30-A M.R.S.A. § 4406(1) ("No person may sell ... any land ... in a subdivision that has not been approved by the municipal reviewing authority of the municipality where the subdivision is located...."). We need not determine whether, in different circumstances, a subdivision may consist of an area less than the entire tract or parcel of land in which the subdivision is located.

statute as applying only to those areas of a subdivision which will actually be part of a subdivision development and point out that the area marked "Reserved for a road" was not included on the subdivision plan submitted to Yarmouth for approval.[4] We disagree with the Moultons' interpretation of the statute that "a subdivision crosses a municipal boundary within the meaning of the subdivision statute only when it creates an independent subdivision, meaning three or more lots, within that town's boundaries."

[¶ 9] The statutory definition of "subdivision" depends not on the nature and extent of development of land, but rather on the division of land into three or more lots in a five-year period. *See Michaud,* 444 A.2d at 42–43. The dual purposes of the subdivision statute—the inhibition of uncontrolled land development and the promotion of planned growth—would be easily frustrated if we accepted the Moultons' interpretation of the statute, under which a subdivision is defined with reference to the areas included on the subdivision plan. Under the Moultons' current proposal, the area marked "Reserved for a road" will provide the only access to the subdivision and therefore is an integral part of the subdivision. Given the increased traffic flow, North Yarmouth clearly has a legitimate interest in reviewing the Moultons' proposed subdivision. See 30–A M.R.S.A. § 4404(5) (requiring municipal reviewing authority to consider the traffic impact of any proposed subdivision).[5] In this case, the trial court's construction of the statute is not only consistent with the plain language of the subdivision statute, but also with its underlying purposes.

[¶ 10] The Moultons next contend that, even if their subdivision crosses municipal boundaries, North Yarmouth's jurisdiction over the subdivision is limited to participation in a joint meeting pursuant to 30–A M.R.S.A. § 4403(1–A) (1996 & Supp.1997). Section 4403(1–A) provides "[i]f any portion of a subdivision crosses municipal boundaries, the reviewing authorities from each municipality shall meet jointly to discuss the application." *Id.* Section 4406(1) prohibits a developer from selling, leasing or developing any land in a subdivision "that has not been approved by the municipal reviewing authority of the municipality where the subdivision is located." *Id.* § 4406(1). A municipal reviewing authority must review all applications for subdivision approval and must "issue an order" granting or denying approval of the proposed subdivision. *See id.* § 4403(1), (5). The Moultons offer no persuasive authority supporting their argument that the joint meeting required by section 4403(1–A) is the sole statutory requirement when a subdivision crosses municipal boundaries. The trial court's interpretation of two separate requirements produces no inconsistency, nor does it render either requirement superfluous.

The entry is:

Judgment affirmed.

---

4. The area marked "Reserved for a road" was included on a subdivision plan approved by the North Yarmouth Planning Board in 1967, in conjunction with the Deer Run Subdivision. The current subdivision statute does not apply to subdivisions approved before September 23, 1971, in accordance with the laws then in effect. *See* 30–A M.R.S.A. § 4402(1) (1996 & Supp. 1997). Citing section 4402, the Moultons argue that the disputed piece of land cannot be part of the Sweetsir Farm subdivision. We need not reach this argument because the Moultons raise it for the first time in their reply brief. *See* M.R. Civ. P. 75A(c) (requiring appellant's reply brief to be "strictly confined" to new matter raised in appellee's brief).

5. If a proposed subdivision crosses municipal boundaries, the municipal reviewing authority must consider whether the subdivision will "cause unreasonable traffic congestion or unsafe conditions with respect to the use of existing public ways in an adjoining municipality in which part of the subdivision is located." 30–A M.R.S.A. § 4404(19) (1996 & Supp.1997). Although not applicable to this action, the enactment of subsection 19 buttresses our conclusion that North Yarmouth has a legitimate interest in reviewing the potential traffic impact of the Moultons' subdivision. *See* P.L.1997, ch. 226, §§ 2–4 (effective Sept. 19, 1997).