STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss.                           CIVIL ACTION
                                        Docket No. CV-07-329
                                        NM -KEN- 9/9/20·8

WACHUSETT PROPERTIES INC.,
d/b/a THE CABINS AT CHINA
LAKE,

            Plaintiff
v.                                      DECISION AND ORDER

TOWN OF CHINA,

            Defendant


This case is before the court on the plaintiff's motion for summary judgment. For the following reasons, the plaintiff's motion is granted.

FACTS

The parties have stipulated to the facts. The plaintiff owns "The Cabins at China Lake," three-acres of property located on the eastern shore of China Lake, in China, Maine (Town). The property consists of 26 individual cabins and a lodge, which contains a restaurant, kitchen, and other common facilities. The cabins contain sleeping and bathroom facilities, but no central heating systems or insulation. Although a central well and septic system serve the entire property, no cabin has a separate water supply or septic system. None of the cabins has cooking devices or kitchen facilities, and there are no plans to permit them.

Each year, the cabins have been rented from Memorial Day to mid-October to vacationing families directly by the plaintiff or its predecessors-in-interest. During the time plaintiff has owned the property, the average stay has been approximately six days. The shortest stay has been one day and the longest, three weeks.

The plaintiff now proposes to "condominiumize" the property by converting the interiors of the 26 cabins and lodge into separate condominium units, which could be conveyed to separate individual owners. Pursuant to the plaintiff's proposed Condominium Declaration, the building exteriors, foundations, common facilities, and land would be owned in common by the unit owners as "Common Elements" not subject to partition. The land will remain a single lot. The seasonal use of the cabins, lodge, and facilities will continue. The exterior dimensions of the buildings and structures will not change and no new structures or units will be created.

In response, the Town has advised the plaintiff that it will not allow the plaintiff to proceed with its proposed condominium plan unless the plaintiff complies with the requirements of the Town's Land Use Ordinance and Subdivision Ordinance.[1] See China, Me., Land Development Code, ch. 2, § 6(2)(a)-ch. 3 (amended Nov. 8, 2005). See also 30-A M.R.S. §§ 4401-4407 (2007). The plaintiff subsequently filed a complaint for declaratory judgment and requests a declaration that the plaintiff's proposed condominium plan will not require compliance with either Town ordinance.

STANDARD OF REVIEW

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

Arrow Fastener Co. v. Wrabacon, Inc., 2007 ME 34, ¶ 18, 917 A.2d 123, 127 (quoting Curtis v. Porter, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

---

[1] Because the cabins and lodge were in existence as of September 23, 1971, the plaintiff need not comply with the current Subdivision Act. See 30-A M.R.S. § 4401(4)(E); see also Town of North Yarmouth v. Moulton, 1998 ME 96, ¶ 8, n.4, 710 A.2d 252, 255.

2

DISCUSSION

I. <u>Whether the proposed condominium plan is subject to the Town's Subdivision Ordinance</u>

The Town has adopted a subdivision ordinance pursuant to the Maine Subdivision Act (Act). <u>See</u> 30-A M.R.S. §§ 4401-4407. For purposes of interpreting the Town's ordinance, the definition of "subdivision" is governed by the Act. <u>See id.</u> § 4401(4)(H-1) ("A municipality may not enact an ordinance that expands the definition of 'subdivision' except as provided in this subchapter."). Although the Act contains several definitions of "subdivision," the Town contends[2] that the proposed condominium plan constitutes a subdivision as a "division of an existing structure or structures previously used for commercial or industrial use into 3 or more dwelling units within a 5-year period." <u>Id.</u> § 4401(4).

a. <u>Division of an existing structure or structures</u>

"[W]hen the statute speaks of a 'division,' it contemplates the splitting off of an interest in land and the creation, by means of one of the various disposition modes recited in [section 4401(4)], of an interest in another." <u>Town of Arundel v. Swain</u>, 374 A.2d 317, 320 (Me. 1977). Section 4401(4) dictates that division may be accomplished by "sale, lease, development, buildings or otherwise." 30-A M.R.S. § 4401(4). Although the Law Court held that the "division of a structure, as distinguished from the division of a parcel of land into lots, does not result in the creation of a subdivision," <u>Cragin</u> was modified by legislation giving rise to the current Act. <u>See</u> P.L. 1987, ch. 885, § 6; 30-A M.R.S. § 4401(4); <u>Town of York v. Cragin</u>, 541 A.2d 932, 934 (Me. 1988). The Act no longer limits a "subdivision" to the division of a "parcel of land into lots," and expressly includes the division of certain structures. <u>See</u> 30-A M.R.S.A. § 4401(4). By

---

[2] (<u>See</u> Def.'s Opp'n Mem. at 3.)

selling the interior of the cabins to new owners, the proposed condominium plan would result in the "splitting off of an interest" in the cabins, and the creation, by means of sale, of an interest in another. The sale of the cabins under the proposed plan constitutes a "division of an existing structure or structures."

### b. Previously used for commercial use[3]

The parties dispute whether "commercial use" refers to the plaintiff's entire enterprise or the physical structures, the cabins and lodge, on the property. The plain language of the statute refers to "existing structure or structures" previously used for commercial use. 30-A M.R.S. § 4401(4). The issue is whether the cabins and lodge, rather than the plaintiff's corporate venture or enterprise, were used for commercial use. See Gensheimer v. Town of Phippsburg, 2005 ME 22, ¶ 22, 868 A.2d 161, 167 (reviewing courts construing an ordinance "look first to the plain language of the provisions to be interpreted").

Although "commercial use" is not defined in the Act, the Town's ordinance defines "commercial use" as

> The use of lands, buildings, or structures as, other than a "home occupation," the intent and result of which activity is the production of income from the buying and selling of goods and/or services, or the provision of non-residential facilities for a fee, and exclusive of rental of residential buildings and/or dwelling units.

China, Me., Land Development Code, ch. 11 at 11-3 (amended Nov. 7, 2006).

The lodge meets the definition of "commercial use," through the sale of meals at the restaurant. The lodge will continue to be used in the same manner under the condominium proposal.

---

[3] The Town does not contend that the property has been used for "industrial use." (See, e.g., Def.'s Opp'n Mem. at 3.)

4

The ordinance excludes the rental of residential buildings or dwelling units from the definition of "commercial use." The rental of the cabins does not render their use "commercial."

In order to fall within the definition of a "subdivision," the Town must show a "division of an existing structure or structures previously used for commercial or industrial use into 3 or more dwelling units." 30-A M.R.S. § 4401(4); China, Me., Land Development Code, ch. 11 at 11-18. Under the condominium proposal, if the cabins are "dwelling units," the Town's ordinance excludes the rental of these "dwelling units" from the definition of "commercial use." If the plaintiff's cabins are instead "residential buildings," although the term is not defined, they are structures that fall outside the definition of "dwelling unit"; otherwise the distinction in the ordinance would be meaningless. See, e.g., Bodack v. Town of Ogunquit, 2006 ME 127, ¶ 12, 909 A.2d 620, 624 ("Rules of statutory construction require zoning ordinances and subdivision standards to be interpreted 'so as [not] to render a provision a suplusage.'"). A finding that the Cabins are "residential buildings" necessarily precludes a finding that the cabins will be divided into "dwelling units" under the plaintiff's condominium proposal.

To avoid this issue, the Town argues that the cabins are used for commercial use as "non-residential facilities for a fee," because "although individuals stayed in them they were not used as residences." (Def.'s Opp'n Mem. at 3.) Although the Town's ordinance does not explicitly define "non-residential facilities," it does define a "non-residential subdivision" as "[a] subdivision . . . involving commercial, industrial, governmental or institutional uses or structures." China, Me., Land Development Code, ch. 11 at 11-12. Presumably, "non-residential facilities" would also contemplate such "commercial, industrial, governmental or institutional" uses. The cabins, rented by

5

members of the public for "the purpose of enjoying the Property's facilities and lake-related recreational activities"[4] are not "non-residential facilities."

### c. Into 3 or more dwelling units

Under the Act, a "dwelling unit" is defined as "any part of a structure which, through sale or lease, is intended for human habitation, including single-family and multifamily housing, condominiums, apartments and time-share units." 30-A M.R.S. § 4401(2). The Town focuses on the phrase "intended for human habitation" and suggests that the definitions of "inhabit," which include "to occupy as a place of settled residence" and "to be present in or occupy in any manner or form," require a broad interpretation of the term "dwelling unit". Such an interpretation is untenable because it would include virtually any structure as a "dwelling unit." See also Melanson v. Belyea, 1997 ME 150, ¶ 4, 698 A.2d 492, 493 (construe statutory language to avoid "absurd, inconsistent, unreasonable or illogical results"). The Town's ordinance provides the proper guidance, defining "dwelling unit" as

> A room or group of rooms designed and equipped exclusively for use as permanent, seasonal, or temporary living quarters for only one family at a time, and containing cooking, sleeping and toilet facilities, that may be "common" toilet facilities. The term shall include mobile homes and rental units that contain cooking, sleeping, and toilet facilities regardless of the time-period rented, and including so-called group or community homes as defined in Title 30-A, M.R.S.A., Section 4357 and manufactured housing as defined in State Law (Title 30-A M.R.S.A. Section 4358).

China, Me., Land Development Code, ch. 11 at 11-4.

Although the Town argues that the ordinance is not controlling because a "municipality may not enact an ordinance that expands the definition of 'subdivision,'" 30-A M.R.S. § 4401(4)(H-1), by adding requirements that a "dwelling unit" contain

---

[4] (A.S.F. ¶ 6.)

cooking and sleeping facilities the Town is narrowing the definition of "subdivision." The Town's definition of dwelling unit is not prohibited by the statute.

Because the parties have stipulated that "[m]icrowaves and other cooking devices are not allowed in the cabins and there are no plans to allow them," and "[u]nder Plaintiff's proposed Condominium Declaration, cooking facilities would be prohibited within all Cabins," the plaintiff's cabins do not fall within the ordinance's definition of "dwelling unit."[5] (A.S.F. ¶¶ 8, 20.) The plaintiff's proposed condominium plan is not subject to the Town's Subdivision Ordinance.

II. Whether the proposed condominium plan is subject to the Town's Land Use Ordinance

The Town's Land Use Ordinance provides, in pertinent part, "no person shall . . . expand or change an existing use, or expand an existing structure . . . when such activity herein requires a permit without first obtaining a permit as set forth in Section 4 of this Ordinance." China, Me., Land Development Code, ch. 2, § 6(II)(a) at 2-26. The plaintiff argues that the only change resulting from the proposed condominium plan is a change of ownership. The plaintiff relies on Keith v. Saco River Corridor Comm'n, and other cases to argue that a mere change in ownership is not a change in use. Keith v. Saco River Corridor Comm'n, 464 A.2d 150, 155 (Me. 1983).

In Keith, the owner of a "functionally divided" parcel of land that was occupied and used by tenants proposed to sell and divide the land into four separate lots. Id. at 152. Although the property was, as existing, exempt from the requirements of the Town's ordinance pursuant to its grandfathered status, the Town contended that the owner's division and sale proposal would destroy its grandfathered status. Id. at 153. In finding the proposal did not destroy the property's grandfathered status, the Court

_____

[5] Some of the cabins "may be used by more than a single family at a time, consistent with past and present practice." (A.S.F. ¶ 13.)

7

initially recognized that when "a nonconforming use or building is shown to exist, neither is affected by the user's title or possessory rights," because "it is the building or the land that is 'grandfathered' and not the owner." Id. at 154. The Court reasoned that the "mere change from tenant occupancy to owner occupancy" under the proposal was not an "extension, expansion or enlargement of the previously existing nonconforming buildings, structures or use" within the meaning of the statute involved. Id. at 155. The Court found that "[t]he post-sale fragmented title in no way would modify the nature or purpose of the preexisting nonconformity . . . nor would it under any view of the factual situation create a new use different in quality, character or degree, from the original use." Id. at 156.[6]

The Town recognizes that Keith lends some support to the plaintiff's position but relies instead on Oman v. Town of Lincolnville, 567 A.2d 1347 (Me. 1990). Oman involved property that consisted of eight cabins and a main house. Id. at 1348. All of the cabins had been used continuously as rental cabins. Id. The owner proposed to sell the cabins and the house as condominium units for seasonal single-family residence. Id. The Court upheld the decision of the Zoning Board of Appeals that the owner's proposal constituted a change in use and, as a result, required compliance with the Town Ordinance's minimum lot requirement. Id. Central to the Oman Court's decision was the interpretation of the term "dwelling unit," defined by the Town's Ordinance as "a room or group of rooms designed and equipped exclusively as living quarters for only one family . . . ." Id. The Court determined that the Zoning Board did not err in finding that under the owner's proposal the converted condominiums, as single family

---

[6] In citing a string of cases from other jurisdictions that support the general premise that a change in ownership does not void a valid existing nonconforming building, structure or use, the Court in Keith included a citation to Graham Court Associates v. Town Council, 53 N.C. App. 543, 281 S.E.2d 418 (N.C. App. 1981), which dealt directly with a conversion to a condominium style of ownership. See Keith, 464 A.2d at 155.

8

residences, would constitute "dwelling units," whereas the original rental cabin, which served transient guests, did not. Id. The Court accepted the Town's argument that the condominium conversion created nine new, individual "dwelling units" out of the original single use. Id.

Oman did not alter the general proposition that a mere change in ownership does not constitute a change in use. Rather, in Oman, the owner's proposal actually created new "dwelling units" under the language in the specific ordinance at issue. Although a change in ownership occurred, a corresponding change in use under the language of the ordinance also occurred. No such change in use under the Town's ordinance exists in this case. As discussed above, unlike Oman, the plaintiff's proposal here will not result in the creation of "dwelling units" under the Town's ordinance. Contrary to the Town's assertion, the Court's interpretation of the particular ordinance in Oman does not compel a finding that a similar change in use must be found under the ordinance involved in this case.

In order to constitute a change in use, an alteration in the character and quality of the use will suffice; an increase in the intensity or volume of the use will not suffice. See Boivin v. Town of Sanford, 588 A.2d 1197, 1199 (Me. 1991). Under the plaintiff's condominium proposal, the cabins will continue to lack cooking and kitchen facilities, central heating, insulation, and separate water supplies and septic systems. The seasonal use of the cabins and lodge will continue, and no expansion of existing buildings will occur. New owners will be permitted to rent their cabins to other members of the public for the same purpose as before. The Town's argument that new owners will use the cabins more exclusively is speculation and is undercut by the fact

9

that the cabins, which are used seasonally, will not be altered.[7]  The plaintiff's proposal results only in a change of ownership, which does not constitute a change in use under the Town's Land Use Ordinance.  See Keith, 464 A.2d at 155-56.

The entry is

> Plaintiff's Motion for Summary Judgment is GRANTED. The Plaintiff's condominium proposal is not subject to the requirements of the Town of China's Subdivision Ordinance or Land Use Ordinance.

Date:  September 9, 2008

Nancy Mills
Justice, Superior Court

---

[7] The court also notes that cabin interiors will be offered for purchase initially to those families that have historically rented the cabins.  (A.S.F. ¶ 24.)

10

WACHUSETT PROPERTIES INC - PLAINTIFF

Attorney for: WACHUSETT PROPERTIES INC
DAVID HIRSHON  - RETAINED 11/13/2007
TOMPKINS CLOUGH HIRSHON LANGER
PO BOX 15060
PORTLAND ME 04112-5060

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CV-2007-00329

**DOCKET  RECORD**

vs
TOWN OF CHINA - DEFENDANT
571 LAKEVIEW DRIVE,
CHINA ME 04926
Attorney for: TOWN OF CHINA
ALTON STEVENS  - RETAINED
MARDEN DUBORD ET AL
44 ELM STREET
PO BOX 708
WATERVILLE ME 04901-0708

Filing Document: COMPLAINT                    Minor Case Type: DECLARATORY JUDGMENT
Filing Date: 11/15/2007

# Docket Events:

11/15/2007 FILING DOCUMENT - COMPLAINT FILED ON 11/15/2007

11/16/2007 Party(s):  WACHUSETT PROPERTIES INC
          ATTORNEY - RETAINED ENTERED ON 11/13/2007
          Plaintiff's Attorney: DAVID HIRSHON

11/16/2007 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 11/13/2007
          Plaintiff's Attorney:  DAVID HIRSHON
          MAILED TO ATTY. OF RECORD.

11/20/2007 Party(s):  TOWN OF CHINA
          RESPONSIVE PLEADING - ANSWER FILED ON 11/20/2007
          Defendant's Attorney: ALTON STEVENS

11/20/2007 Party(s):  TOWN OF CHINA
          ATTORNEY - RETAINED ENTERED ON 11/20/2007
          Defendant's Attorney: ALTON STEVENS

11/26/2007 ORDER - SCHEDULING ORDER ENTERED ON 11/26/2007
          NANCY  MILLS , JUSTICE
          ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
          PARTIES/COUNSEL

11/26/2007 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 08/01/2008

11/26/2007 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 11/26/2007
          NANCY  MILLS , JUSTICE

12/21/2007 Party(s):  TOWN OF CHINA
          SUMMONS/SERVICE - ACCEPTANCE OF SERVICE FILED ON 12/17/2007
          SIGNED BY ATTY STEVENS ON 11/14/07 AND FILED ON 12/17/07 BY ATTY HIRSHON.

04/11/2008 Party(s):  WACHUSETT PROPERTIES INC
          MOTION - MOTION TO WAIVE ADR FILED ON 04/07/2008
          Plaintiff's Attorney:  DAVID HIRSHON
          CONSENTED-TO MOTION TO EXEMPT CASE FROM RULE 16B REQUIREMENTS.  PROPOSED ORDER.


04/11/2008 Party(s):  WACHUSETT PROPERTIES INC
          MOTION - OTHER MOTION FILED ON 04/07/2008
          Plaintiff's Attorney:  DAVID HIRSHON
          CONSENTED-TO MOTION TO SUBMIT ACTION AS CASE STATED AND MOTION FOR EXPEDITED HEARING.
          PROPOSED ORDER.


04/11/2008 Party(s):  WACHUSETT PROPERTIES INC
          MOTION - OTHER MOTION FILED ON 04/07/2008
          Plaintiff's Attorney:  DAVID HIRSHON
          PLTF'S MOTION FOR JUDGMENT, MEMORANDUM OF LAW, REQUEST FOR HEARING        4/15/08 -
          PROPOSED ORDER FILED


05/06/2008 Party(s):  WACHUSETT PROPERTIES INC
          MOTION - MOTION TO WAIVE ADR GRANTED ON 05/02/2008
          NANCY  MILLS , JUSTICE
          COPY TO ATTYS HIRSHON AND STEVENS


05/06/2008 Party(s):  WACHUSETT PROPERTIES INC
          MOTION - OTHER MOTION GRANTED ON 05/02/2008
          NANCY  MILLS , JUSTICE
          CONSENTED-TO MOTION TO SUBMIT ACTION AS CASE STATED                COPY TO ATTYS
          HIRSHON AND STEVENS


05/06/2008 Party(s):  WACHUSETT PROPERTIES INC
          MOTION - OTHER MOTION DENIED ON 05/02/2008
          NANCY  MILLS , JUSTICE
          MOTION FOR EXPEDITED HEARING.                                     COPY TO ATTYS
          HIRSHON AND STEVENS


05/06/2008 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 05/02/2008
          NANCY  MILLS , JUSTICE


05/07/2008 Party(s):  TOWN OF CHINA
          OTHER FILING - OPPOSING MEMORANDUM FILED ON 05/05/2008
          Defendant's Attorney: ALTON STEVENS
          DEFT'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT


05/07/2008 Party(s):  TOWN OF CHINA
          MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 05/05/2008
          Defendant's Attorney: ALTON STEVENS
          MOTION TO EXTEND TIME TO FILE MEMORANDUM IN OPPSITION TO MOTION FOR SUMMARY JUDGMENT.
          PROPOSED ORDER.


05/09/2008 Party(s):  TOWN OF CHINA
          MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 05/08/2008
          NANCY  MILLS , JUSTICE
          COPY TO ATTYS HIRSHON AND STEVENS

05/12/2008 Party(s): WACHUSETT PROPERTIES INC
RESPONSIVE PLEADING - RESPONSE FILED ON 05/12/2008
Plaintiff's Attorney: MARSHALL TINKLE
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT.


05/13/2008 Party(s): WACHUSETT PROPERTIES INC,TOWN OF CHINA
OTHER FILING - OTHER DOCUMENT FILED ON 05/09/2008
Defendant's Attorney: ALTON STEVENS
Plaintiff's Attorney: DAVID HIRSHON
AGREED STATEMENT OF FACTS, W/ ATTACHMENTS.  S/TINKLE, ESQ.


05/20/2008 Party(s): WACHUSETT PROPERTIES INC
OTHER FILING - OTHER DOCUMENT FILED ON 05/20/2008
DECISION OF THE LAW COURT, MIDCOAST COHOUSING LAND ACQUISITION, LLC V. THE RIVERHOUSE
TRUST (COPY)


09/10/2008 Party(s): WACHUSETT PROPERTIES INC
MOTION - OTHER MOTION GRANTED ON 09/09/2008
NANCY  MILLS , JUSTICE
PLTF'S MOTION FOR JUDGMENT                                      COPY TO ATTYS
HIRSHON AND STEVENS


09/10/2008 FINDING - JUDGMENT DETERMINATION ENTERED ON 09/09/2008
NANCY  MILLS , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPY TO ATTYS
HIRSHON AND STEVENS


09/10/2008 ORDER - SUMMARY JUDGMENT ENTERED ON 09/09/2008
NANCY  MILLS , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPY TO ATTYS
HIRSHON AND STEVENS                                    COPY TO DEBORAH FIRESTONE,
GARBRECHT LAW LIBRARY, AND DONALD GOSS W/ DOCKET RECORD.
Judgment entered for WACHUSETT PROPERTIES INC and against TOWN OF CHINA.


09/10/2008 FINDING - FINAL JUDGMENT CASE CLOSED ON 09/10/2008


A TRUE COPY
ATTEST: _____
                         Clerk